# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CASE NO. 19-CR-263 (DLF) |
| | : | |
| v. | : | |
| | : | |
| **ANTHONY ALLEN MORRISON,** | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration of 97 months (8 years and 1 month) to be followed by 60 months (5 years) of supervised release, with the conditions recommended by United States Office of Probation. Additionally, the defendant is required by statute to register as a sex offender for a minimum period of 25 years and to pay appropriate restitution. In support of this memorandum and recommendation, the government relies on the following points and authorities, and such other points and authorities that may be cited at the sentencing hearing.

**I.     BACKGROUND**

    **A.     Statement of Offense**

On various dates between March 2018 and July 2018, Online Covert Employees (OCEs) used a law enforcement tool to review a list of Internet Protocol ("IP") addresses that: (1) had been recorded as sharing suspected child pornography images or videos, identified by their

1

unique Secure Hash Algorithm Version 1 hash value ("SHA 1 hash value"),[1] on a peer-to-peer ("P2P") file sharing network;[2] and (2) were believed to resolve back to physical addresses located in the District of Columbia, based on a commercial geolocation program utilized by the law enforcement tool. An IP address is unique to a particular computer during an online session and makes it possible for data to be transferred directly between computers.

The law enforcement tool indicated that the IP address 73.163.175.127 ("Subject IP Address #1") was used to share known child pornography images and/or videos and that the computer using that IP address was physically located in the District of Columbia.

On March 29, 2018, an OCE used a P2P software client program to connect directly to Subject IP Address #1, which had multiple files being shared on the P2P file sharing network. The OCE initiated multiple downloads from Subject IP Address #1 and partially or completely downloaded multiple files containing suspected child pornography stemming from Subject IP address #1. Specifically, the OCE partially or completely downloaded in excess of 50 files containing suspected child pornography from Subject IP Address #1. Two examples of the downloaded files are the following:

---

[1] "Secure Hash Algorithm Version 1 hash value" (SHA 1 hash value) is an algorithm that processes digital files, resulting in a 160-bit value that is unique to that file. It is computationally infeasible for two files with different content to have the same SHA 1 hash value. By comparing the hash values of files, it can be concluded that two files that share the same hash value are identical with a precision that exceeds 99.9999 percent certainty. There is, for example, no known instance of two different child pornographic images or videos having the same SHA1 hash value.

[2] "Peer to Peer file sharing" (P2P) is a method of communication available to Internet users through the use of special software, which may be downloaded from the Internet. In general, P2P software allows a user to set up files on a computer to be shared with other computer users running compatible P2P software. A user may obtain files by opening the P2P software on the user's computer and searching for files that are currently being shared on the network. A P2P file transfer is assisted by reference to the IP addresses of computers on the network: an IP address identifies the location of each P2P computer and makes it possible for data to be transferred between computers.

a) The file identified as "(pthc)kinderficker(vater fict seine 4 j tochter)159.mpg" contains a video file that depicts a girl that, due to her youthful appearance and small size, appears to be approximately 5 to 6 years of age. That girl is engaged in a lascivious exhibition of her genitalia.

b) The file identified as "(pthc-jho-lolifuck) 6 yo girl get cum in the mouth in laundy room(2).wmv" contains a video file that depicts a prepubescent girl who is standing in front of what appears to be an adult male. That girl is engaged in a lascivious exhibition of her genitalia.

On July 12, 2018, an OCE used a P2P software client program to connect directly to Subject IP Address #1 again. The OCE initiated multiple downloads from Subject IP Address #1 and, again, partially or completely downloaded multiple files containing suspected child pornography. One example of the downloaded files is the following:

c) The file identified as "(Luto)Peja_all(pedo gay pthcboy)" contains a video file that depicts two prepubescent boys who are manually manipulating one another.

Law enforcement queried the America Registry for Internet Numbers (ARIN), which manages the distribution of IP addresses for the United States, and determined that Subject IP Address #1 was associated with the Internet Service Provider Comcast. Law enforcement sent an administrative subpoena to Comcast for subscriber information and the physical service address associated with Subject IP Address #1 during the dates and times of the downloads described above. Comcast responded that on these dates and times, Subject IP Address #1 was assigned to subscriber Anthony Morrison (referred to hereinafter as MORRISON), with a physical service address of XXXX 1st Street, N.W., Apt XXX, Washington, DC 20011.

Upon receipt of this information, law enforcement located information found in open source and a law enforcement sensitive data base further indicating that MORRISON resided at this address. This address is listed on MORRISON's identification card issued by the District of Columbia.

On August 16, 2018, a search warrant issued by United States Magistrate Judge G. Michael Harvey was executed at MORRISON's address of XXXX 1st Street, N.W., Apt XXX, Washington, DC 20011. During the search, MORRISON was voluntarily interviewed. MORRISON indicated that he used P2P file sharing torrent programs to download and view child pornography and masturbated to the images. MORRISON also indicated that he was generally aware of how these torrent programs work, and he specifically referred to "seeding."[3] During the interview, MORRISON was advised by an interviewing agent that he had shared files containing child pornography with the investigating agents through the use of these programs.

Between August 2018 and November 2018, investigating agents examined files stored on evidence seized from the search warrant. The review revealed that some of the seized items were used to view and store child pornography.

On November 18, 2018, OCEs again used a law enforcement tool to review a list of IP addresses that: (1) had been recorded as sharing suspected child pornography images or videos, identified by their unique SHA1 hash values, on a P2P file sharing network; and (2) were believed to resolve back to physical addresses located in the District of Columbia based on a commercial geolocation program utilized by the law enforcement tool.

The law enforcement tool indicated that the IP address 98.204.28.217 ("Subject IP

---

[3] Torrent program users distribute files to other users on the same program while downloading. "Seeding" is an industry term for leaving one's torrent program open even after one has finished downloading in order to help further distribute files.

4

Address #2") was used to share known child pornography images and/or videos and that the computer using that IP address was physically located in the District of Columbia.

On November 18, 2018, an OCE used a P2P software client program to connect directly to Subject IP Address #2. The OCE initiated multiple downloads from Subject IP Address #2 and partially or completely downloaded multiple files containing suspected child pornography. Specifically, the OCE partially or completely downloaded in excess of 50 files containing suspected child pornography from Subject IP address #2. Two examples of the downloaded files are the following:

    d)    The file identified as "Film _A_005" contains a video file that depicts a prepubescent boy who is kneeling on a chair. The child's pants are pulled down and his buttocks is exposed. An adult male removes his erect penis from his pants and stands behind the child.

    e)    The file identified as "10Yo Boy Ronaldinho – Dando O Rabinho 01 De04 Brazilian Beautiful 10 Years" contains a video file that depicts a prepubescent boy who is naked and his penis is the focal point of the video. During the video, what appears to be an adult hand touches the boy's penis and unclothed chest.

Law enforcement queried the America Registry for Internet Numbers (ARIN), which manages the distribution of IP addresses for the United States, and determined that Subject IP Address # 2 was associated with the Internet Service Provider Comcast. Law enforcement sent an administrative subpoena to Comcast for subscriber information and the physical service address associated with Subject IP Address # 2 during the dates and times of the downloads described above. Comcast responded that on these dates and times, Subject IP Address #2 was assigned to subscriber MORRISON, with the same physical service address.

Subsequent to MORRISON's arrest, MORRISON waived his rights and was interviewed again. During this interview, he again acknowledged downloading and viewing child pornography, as well as sharing child pornography through a bit torrent program.

### B.     Procedural Posture

The defendant was charged on March 13, 2019 via criminal complaint in the United States District Court of the District of Columbia with one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).  A warrant was issued for his arrest at that time, and the warrant was executed the following day, on March 14, 2019.  The defendant had his initial appearance in this Court on March 14, 2019, and was temporarily ordered held without bond. The Defendant ultimately waived his preliminary hearing, but elected to have a detention hearing, which took place on March 19, 2019.  Following the detention hearing, the Defendant was ordered held without both pending trial. On August 1, 2019, the government filed an information charging the defendant with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) pursuant to a plea agreement reached by the parties.  On August 27, 2019, the defendant pleaded guilty to the sole count in the Information under a written plea agreement. That sentencing was ultimately delayed to allow for the defendant to undergo a complete psychological and psychosexual examination authorized under 18 U.S.C. Sections 3352(b) and 4244(b).  That examination was completed and the sentencing was set for a VTC/telephonic sentencing on June 24, 2020 at 10am.

## II.     SENTENCING CALCULATION

### A. Statutory Penalties

The offense of Distribution of Child Pornography, in violation 18 U.S.C. § 2252(a)(2), carries a mandatory-minimum prison sentence of 5 years and a maximum sentence of 20 years

imprisonment, a maximum fine of $250,000, and a term of supervised release of not less than five years and up to life pursuant to 18 U.S.C. § 3583.  See Presentence Investigation Report filed May 22, 2020 (ECF 22) ("PSR") ¶¶ 4, 98, 103, 116.  Pursuant to 18 U.S.C. § 3013(a)(2)(A), the defendant must pay a mandatory special assessment fee of $100 for each felony conviction payable to the Clerk of the United States District Court for the District of Columbia. See PSR ¶ 117.  The defendant must also register as a sex offender for a minimum period of 25 years pursuant to 18 U.S.C. § 2250 and 34 U.S.C. §§ 20911(3), and 20915(a)(2).

### B. Sentencing Guidelines Range

The government and defense agree that the applicable Estimated Guidelines Range is 97 to 121 months incarceration. See PSR ¶ 6.[4]  The base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a)(2).  All parties agree that several specific offense characteristics apply: the offense involved a prepubescent minor or minors under the age of 12 (+2); the offense involved the knowing distribution of child pornography (+2); the offense involved the use of a computer or an interactive computer service (+2)); and the offense involved at least 600 images (+5). See id. ¶¶ 25, 26, 28, 29.  Probation also adds the specific offense characteristic under §2G2.2(b)(4) for the portrayal of sadistic or masochistic conduct (+4) that was not agreed to by the parties in the plea nor in the content of the statement of offense.[5]

---

[4] Probation differs from the parties due to its application of the specific offense characteristic for sadistic or masochistic conduct under §2G2.2(b)(4), that was not provided for in the plea agreement. This four level enhancement would raise the estimated guideline range to 151-188 months if it applied.

[5] While probation appears to base its application of this specific offense characteristic on the content of the statement of facts from the initial complaint, the cited content that would constitute the specific offense characteristic at issue is not included in the agreed to statement of offense and not pursued by the government.  Forensic limitations regarding proving distribution of the bit torrent data packets in questions, combined with technological difficulties in transferring and accessing complete videos (rather than thumbnails or segments), together with

The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Id. ¶ 35. The government requests that the defendant's level be decreased by an additional point pursuant to § 3E1.1(b), as the defendant timely notified authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. Id. ¶ 36. With these adjustments, the defendant's total offense level is 30, according to the government and the defendant's Estimated Guidelines Range in the plea agreement.

The defendant has a total criminal history score of zero points. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of one establishes a criminal history category of I. With a total offense level of 30 and a criminal history category of I, the defendant's recommended guideline sentencing range is 97 to 121 months, and a supervised release range of 5 years to life, and an effective fine range of $30,000 to $250,000. PSR. ¶ 116. This offense also carries a mandatory minimum term of incarceration of 60 months.

### III.   GOVERNMENT'S RECOMMENDATION

#### A.    Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 125 S. Ct. at 756.

---

the defendant's limited admissions, led the government to extend the plea offer it did, and predicated on the content of the statement of offense that the parties believe should be followed.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.") After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

### B.     Basis for the Government's Recommendation

Given the particular circumstances of this case, and pursuant to the plea agreement in which the government agreed to cap its allocution at the low end of the guideline range, the government submits that a sentence of 97 months incarceration, to be followed by five (5) years supervised release, and the specific conditions of supervision recommended by the United States Office of Probation, is appropriate and warranted based on the factors outlined in 18 U.S.C. § 3553(a). The recommended sentence is sufficient, but not greater than necessary to accomplish the purposes of sentencing. Given the serious nature of the defendant's conduct in this case and

his risk to the community, balanced against his lack of criminal history and early acceptance of responsibility, the government believes this is an appropriate sentence.

### 1.     Nature and Circumstances of the Offense

The defendant's distribution of child pornography is a serious, violent offense, and not just because of Congress' designation of it as such and imposition of a five-year mandatory minimum term of incarceration.  As many courts have recognized, "[It is an] undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way." United States v. Miller, 665 F.3d 114, 123 (5th Cir. 2011).

The defendant shared videos and images of pre-pubescent children being sexually exploited. Moreover, he did not merely distribute child pornography one occasion. Rather, he distributed files on numerous occasions over a period of more than six months. Even after his electronic devices were seized, and he was interviewed by the FBI, and told that he distributed child pornography to agents, the defendant still did not stop his conduct. Instead, he went out, purchased a new tablet computer, and continued to distribute child pornography.

At the moment these children in these videos and other similar images and videos were filmed, they were being treated at best as sexualized objects and at worst being horrifically and repeatedly sexually abused. The abuse of child pornography victims does not end, however, when the physical contact or production of images or videos is over. The abuse and harm go on as long as those images and videos are viewed, traded, collected, and used by offenders for sexual gratification. In this age, victims of child pornography must attempt to cope with the

knowledge that the worst moments of their young lives are forever memorialized and available to child pornography consumers. Individuals—like the defendant—who receive, seek, view, keep, trade, distribute, and use child pornography for their own sexual gratification are part of the illicit market for child pornography, which continually re-victimizes the children in already-existing images and videos and promotes the victimization of even more children for new images and videos.

### 2. Defendant's History and Characteristics

Defendants in child pornography cases often possess positive characteristics that allow them to remain undetected in society. Quite often, defendants in these cases appear to be like any other law-abiding citizen, with education, work histories, and supportive families. The danger they pose to children is often not readily apparent.

The defendant appears to fit this mold based on his lack of criminal history. However, his criminal conduct here occurred over an extended period of time that did not stop, even after his initial interactions and interview with law enforcement, suggesting that his lack of criminal history may not fully reflect his history and characteristics. The defendant did acknowledge guilt at the time of his arrest and plead guilty at an early stage of the litigation. These considerations were taken into account in the plea agreement to cap the government's allocution to the bottom of the Estimated Guidelines Range.

### 3. Punishment, Deterrence, Protection, and Correction

The sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;

and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses. The defendant's distribution of child pornography is harmful to society at large, as well as the specific child victims, and warrants a substantial sentence of imprisonment. As a matter of general deterrence, a sentence of incarceration signals that trafficking in child pornography represents a serious crime that cannot be tolerated. As a matter of specific deterrence, a prison sentence is appropriate and necessary to deter the defendant from committing future child exploitation crimes. Furthermore, a term of 5 years supervised release, with specific conditions recommended by the probation office, is crucial to ensuring that the defendant receives the treatment and support he needs to make further attempts to ensure that he does not commit similar offenses in the future.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration, as he is ineligible for probation because it is expressly precluded by the statute. According to the PSR, the defendant does not appear to have the ability to pay a fine. See PSR ¶ 102. In addition, the court should impose a term of supervised release to ensure that the defendant does not re-offend. The conditions of supervised release should include: sex offender evaluation and treatment, restrictions on direct contact with minors, and monitoring of the defendant's use of the Internet, computers, and any other Internet-capable devices as well as any other special conditions recommended by the United States Office of Probation in the PSR and at sentencing.

### 5. Restitution

The government has received a victim impact statement and request for restitution from a victim in this case and will file these documents under seal with the Court under separate cover. The victim is entitled to restitution in this case pursuant to 18 U.S.C. 2259 because the defendant possessed and distributed two files involving that victim,[6] and the government has been attempting to facilitate restitution negotiations involving the victim's attorney and the defense. These negotiations had not been successfully completed at the time of this filing. If the negotiations are not successfully completed at the time of sentencing, the government would ask that the court consider ordering restitution in the amount of $9000 as requested by the victim's attorney for the reasons described in the restitution request filed under seal.

## CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 97 months, to be followed by 5 years of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender for a minimum period of 25 years and pay appropriate restitution.

---

[6] *See* 18 U.S.C. § 2259(a), (c); *see also* United States v. Monzel, 930 F.3d 470, 476 (D.C. Cir. 2019); United States v. Hite, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:
    (A) Medical services relating to physical, psychiatric, or psychological care;
    (B) Physical and occupational therapy or rehabilitation;
    (C) Necessary transportation, temporary housing, and child care expenses;
    (D) Lost income;
    (E) Attorneys' fees, as well as other costs incurred; and
    (F) Any other losses suffered by the victim as a proximate result of the offense.
18 U.S.C. § 2259(a), (b)(3); *see also* United States v. Hite, 113 F. Supp. 3d 91, 94 (D.D.C. 2015).

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY


_____/s/_____
Nicholas Miranda
Assistant United States Attorney
D.C. Bar 995769
555 4th Street, N.W., Room 4-233
Washington, D.C. 20530
(202) 252-7011
Nicholas.Miranda@usdoj.gov